## Case No. 5,545.

### GOODRICH et al. v. NORRIS.

[Abb. Adm. 196.] [1]

District Court, S. D. New York.    March, 1848.

BILL OF LADING — INTENTION OF THE PARTIES— EFFECT AS A RECEIPT—QUANTITY OF GOODS—MISTAKE.

1. A bill of lading is to be regarded in a double aspect,—as a contract for the transportation and safe delivery of the goods covered by it, at the stipulated freight, and also as a receipt for the goods for the purposes of the contract.

2. In so far as a bill of lading operates as a contract, it is conclusive as to the intentions of the parties, and may not be varied by parol evidence.
[Cited in Dixon v. Columbus, etc., R. Co., Case No. 3,929.]

[1] [Reported by Abbott Brothers.]
10 FED. CAS.—39

3. In so far as a bill of lading operates as a receipt merely, it is open to explanation or rectification by parol evidence, as in any other receipt.
[Cited in The Wellington, Case No. 17,384.]

4. The statement of the quantity of goods received, contained in a bill of lading, may be rectified in an action by the original shipper, by proof that through mistake the bill was signed for a greater quantity than was actually delivered.
[Cited in Crenshawe v. Pearce, 37 Fed. 435.]

5. But the proof of mistake in such case must be clear and unquestionable, to rebut the evidence afforded by the bill.

This was a libel in personam, by James E. Goodrich and others, against John Norris, master of the schooner John I. Adams, to recover damages for the breach of a contract of affreightment. The libel showed that the libellants had shipped on board the respondent's schooner a number of barrels of tripe, to be delivered to consignees at Boston, and that the respondent failed to deliver five of the barrels,—to recover the value of which this action was brought. The other facts appear in the opinion.

George S. Stitt; for libellants.

I. The respondent cannot contradict his bill of lading. Creery v. Holly, 14 Wend. 26; Barrett v. Rogers, 7 Mass. 297. A bill of lading is a contract, and is conclusive, especially as against the master; it may not be in all cases conclusive as against the ship-owners.

II. Admitting, however, for the purpose of the argument, that respondent may show a mistake in fact, he has not shown such mistake: (1) His witness merely swears that when the vessel was on her voyage they compared the cargo with the bills, and found but twelve barrels of tripe on board. This is all the testimony produced to prove the pretended mistake. But it does not prove that the eleven barrels mentioned in our bill of lading were not received by the schooner or delivered by the libellants. (2) In this case the respondent had the means of ascertaining the truth, as he undoubtedly did, and there is no pretence of fraud. This is not a "mistake of fact," within any proper sense of that phrase. See Saltus v. Everett, 2 Hall, 252.

III. The proofs indicate that in fact seventeen barrels were delivered to the vessel.

IV. The libellants claim a judgment for the highest price proved, twelve dollars per barrel, and interest on that amount from the latter part of December, 1846, allowing the ordinary time for a voyage to Boston.

Burr & Benedict, for respondent.

I. The objection taken by libellants' counsel, that no evidence can be received to vary the bill of lading, cannot be sustained, because (1) the libellants were the original shippers of the goods, and as between the shipper and the ship-owner, the bill of lad-

ing may be contradicted (Abb. Shipp. 334); and (2) if the goods were never on board, the libellants cannot be injured by having the truth established; though it should contradict, vary, or explain a written instrument signed through fraud or mistake.

II. Upon the question of fact, whether the goods were in fact delivered on board, the evidence is satisfactory that they were not.

BETTS, District Judge. This case rests wholly upon one fact, and turns upon the force and effect of the evidence relative to that fact, offered upon both sides.

On December 3, 1846, the respondent signed a bill of lading, in the usual form, for eleven barrels of tripe, shipped by the libellants on board the respondent's schooner, to be delivered at Boston, to the firm of Davis & Whittemore. The bill described the barrels as being "marked and numbered as in the margin," but it contained no marginal marks or numbers.

The vessel arrived at Boston, having on board twelve barrels of tripe, but six only were marked for Davis & Whittemore, and that number were delivered to them. The other six were delivered to other consignees, conformably to their marks. No bill of lading was shown for them, although the mate testifies that he believes one was signed; and he also proves that freight was received for twelve barrels only. He also testifies that no more than twelve barrels were on board the vessel, and that after the vessel got out of port, it was ascertained, by the amount of cargo and by the freight list, that bills of lading had been signed for five barrels more than were in the vessel.

The libellants contend that evidence to contradict or explain the bill of lading is incompetent, and maintain that the respondent is concluded by his signature to the one produced. This is not the rule as between the original parties of the bill of lading, and where no rights of third persons are in question. In that case evidence may be received to show a mistake in the statement of the quantity of goods received, contained in the bill of lading.

In an action by the original shipper of the goods, the master or owner will be allowed to show that he was induced by fraud to sign a bill of lading containing an exaggerated statement of the quantity of goods received; and that such evidence will defeat an action for the recovery of an alleged deficiency in the delivery made, is well settled by the case of Bates v. Todd, 1 Moody & R. 106. That was an action against the owners of the ship Thames, on a bill of lading, signed by the master at Singapore, for eight hundred and ninety bags of pepper. The declaration alleged that eight hundred and ninety bags were shipped, and that some of them had been lost. The defence was, that only seven hundred and ninety bags were in fact shipped, and that the captain

had been induced to sign the bill of lading for eight hundred and ninety by the fraud of the plaintiffs' agent at Singapore. It was contended for the plaintiffs, that the bill of lading was conclusive, and estopped the defendant who was owner of the ship. But Chief Justice Tindal held, that as between the original parties, the bill of lading was merely a receipt, liable to be opened by the evidence of the real facts, and he left the question to the jury, whether in fact eight hundred and ninety bags or only seven hundred and ninety were shipped.

The case of Berkely v. Watling, 7 Adol. & E. 29, is somewhat broader. The plaintiff there declared, in assumpsit, that the defendants, Watling and Nave, were owners of a ship called the Search, and that in consideration that the plaintiff, at their request, shipped goods on board, to be delivered to him or his assigns, the defendants promised to deliver them and had failed to do so. Nave pleaded separately, that the plaintiff did not cause the goods to be shipped in the vessel. On the trial the plaintiff produced a bill of lading, signed by the captain of the ship, transmitted to the plaintiff by Watling, which stated the goods to be shipped by Watling, to be delivered to the plaintiff or his assigns. It was also proved that the plaintiff held the bill of lading for value. Evidence was offered at the trial, on the part of the defendant, Nave, to show, that although the master signed the bill of lading for the goods, yet they were never shipped on board the vessel, as therein expressed; and the question was, whether Nave was estopped by the bill of lading from showing that fact. "The statement in the declaration," said Mr. Justice Littledale, "is that the plaintiff caused the goods to be shipped, which is put in issue by the second plea. How does the plaintiff prove his allegation? He puts in a bill of lading, which certainly appears to be signed by the master, but, on the face of it, the goods are shipped by Watling. Then the plaintiff must prove Watling to be his agent; by so doing he supports the allegation. It turns out that in fact the goods were not shipped on board the Search at all. But the plaintiff says that the defendant, Nave, is estopped from showing this by the bill of lading signed by his own agent. How is he estopped? Watling knew the fact, and his knowledge is the plaintiff's knowledge. The plaintiff, knowing the fact by Watling, his agent, how is the defendant, Nave, estopped by what Watling does as his agent? Since, therefore, the plaintiff, as shipper, is cognizant of the facts, we need not say how far, on the general question, there is an estoppel, but, in my opinion, the bill of lading is not conclusive."

In the case now presented, no suggestion of fraud is made, but the respondent relies upon proof of the mere fact that the goods receipted for by the bill were never actually delivered to the vessel. That fact, if clearly

proved, will exonerate the master from responsibility to the original shipper, though it might not release him in an action by an assignee. The bill of lading has, in legal effect, a double aspect. It is a contract for the transportation and safe delivery of the property shipped, and it also embodies, as a matter collateral to that contract, a receipt for the goods so shipped. In so far as the bill operates as a contract, it is, undoubtedly, the exclusive evidence of the obligation of the parties; but in respect to those clauses which operate merely as a receipt for the goods, it has no higher obligation than an ordinary receipt, and is open to explanation and rectification by parol proof. 3 Phil. Ev. (Cow. & H. notes) 1439. The fact that both a contract and a receipt are embodied in one instrument, forms no reason why they should be regarded as differing in effect from similar instruments executed in an independent form.

The clauses in the bill of lading which relate to the quantity and condition of the goods received, do not enter into the con tract between the parties; they are parts of the receipt. The contract is for the transportation of the goods, for their delivery, for the stipulated freight, &c. But the statements that the goods embraced within this contract have been received on board the vessel, and that they are of such and such description in point of quantity, quality, condition, marks and numbers, &c., are in the nature of a receipt, not an agreement. They are therefore explainable, not alone by evidence of fraud, but by such proof of mistake as is by well-settled rules of law permitted to control the operation of ordinary receipts. It is proper, therefore, to receive the evidence offered on the part of the defence in this case, and if it clearly shows that the goods for which this suit is brought were never, in point of fact, delivered to the respondent, it will constitute a good defence to this action.

On the part of the libellant, the testimony, if not direct and complete, to the fact that the seventeen barrels were delivered on board the vessel, at least strongly corroborated the bills of lading, and may furthermore account for the difference between the quantity receipted and that found on board; as one witness states that he took down five barrels, and another person in the libellant's employment carted down twelve barrels. The latter saw barrels already on the dock, and was told in answer to his inquiry on board the vessel, that they belonged to the libellant's parcel. He left his five barrels on the dock near the vessel, by direction of those on board. He does not remember that he had a receipt given him, but thinks the other man brought back a receipt for his loads. He assisted the other man (who is now at sea) in loading twelve barrels, eleven of which were marked Whittemore & Davis, and one to O. Robinson. One of those he

carted down had the same mark, and the other four were Russel & Squires.

The mate's impression is, that six of the barrels were addressed to Russel & Squires, and were delivered to them out of the twelve on board. He further says he found four barrels on the dock when the vessel came into her berth, and had them rolled on board. They were marked for Whittemore & Davis; and he further testifies that the twelve barrels were all brought to the vessel by one person. If the evidence of the other cartman is credited, there are then five more barrels which were delivered by him, of which the mate took no account.

Under these circumstances, the testimony of the mate does not destroy the effect of the bills of lading. The written evidence must prevail, and the respondent must be held to account for the five barrels deficient in the delivery. The proof is they were worth here from $10 to $12 per barrel; and the lowest valuation of the goods will be taken in such case, when the evidence carrying them higher is not precise and clear. The libellant is entitled to a decree for $50, with interest from December 3, 1846, to this day, and his costs to be taxed.